IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GREENGAEL, LC, *et al.*, *Plaintiffs*, <br><br> v. <br><br> THE BOARD OF SUPERVISORS OF CULPEPER COUNTY, VIRGINIA, *Defendant*. | CASE NO. 3:07-CV-00005 <br><br> OPINION AND ORDER <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the Defendant's June 25, 2007 Motion for Summary Judgment. For the reasons given below, the Motion is GRANTED.

## I. BACKGROUND

This suit was originally brought by two sets of plaintiffs: Greengael, a corporate entity which sought to build a large low- and moderate-income housing complex but was stymied by inability to obtain water and sewer as well as zoning changes; and the Smith family, whose property was also the subject of an unrelated zoning change. I dismissed most of the claims on June 1, 2007. I held Greengael's claims relating to the Ashmeade development barred by *res judicata*, and found that the Smith family lacked standing to complain about the County's actions on the Ashmeade project. I reserved the question of whether changes to the zoning law governing the Smith property violated any law, because at that time the exact changes which had been made were not in the record. Subsequent briefing and argument has illuminated this change

as well as provided guidance on the governing law.

As a preliminary matter, I must determine which Counts of the complaint are in issue, and of what, exactly, they complain. Because the bulk of the complaint is concerned with the Ashmeade high-density project, mentions of the Smith property are scattered thinly throughout the complaint and do not rate an entire Count to themselves. Only paragraphs 18 and 19 explicitly mention the restrictions on the Smith property, and allege that the owners "cannot alter or enlarge it, nor expand it to multi-family use," and are "unable to expand" it. Defendant has repeatedly countered that expansion of the house was never possible, even under the old zoning, but did concede at the hearing that remodeling the house into a boarding house with multiple apartments might have been legal before but was barred today. In briefing the instant Motion, Plaintiffs posited the possibility of the demolition of the existing house and its replacement with a row of townhouses or an apartment building. Defendant admits that this, too, would have been legal under the old zoning but impossible after the change. I will consider all of these possibilities in the discussion to follow.

A careful reading of the complaint shows that only Count One mentions the Smith family. My analysis will therefore be limited to whether or not the zoning text amendment violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and

drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc*, 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... [must] by affidavits or as otherwise provided in ... [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, Plaintiff cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact.").

### III. GOVERNING LAW

The Fair Housing Act ("FHA") makes it unlawful to "make unavailable or deny[] a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). A municipality may "make unavailable or deny a dwelling" by official

action which prevents the construction of housing. *Smith v. Clarkton*, 682 F.2d 1055 (4th Cir. 1982) (refusal to construct public housing), *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977) ("Arlington II") (zoning).

At the hearing, counsel debated whether the FHA bans discrimination based on income, i.e., whether action taken to limit low-cost housing is itself a violation of the FHA, or whether discriminatory impact or intent is a necessary element. I asked the parties to brief the issue, and a review of their briefs and the caselaw reveals that the answer is "sometimes."

The statute itself says nothing about income; as Defendant rightly points out, it is not the "affordable housing act." There is no reason to think that a landlord or homeowner could not set a high price for a dwelling, provided that he or she was prepared to rent or sell to anyone who presented a bona fide offer. An unpublished Fourth Circuit cases endorses this view, even in a case where minorities were shown to suffer a disproportionate impact. *Williams v. 5300 Columbia Pike Corp.*, 1996 U.S. App. LEXIS 31004 (4th Cir. 1996). The federal government has not empowered the courts to impose price controls on the nation's real estate in the name of fair housing. However, when a municipality acts, it is not subject to the same market discipline as a private party. A landlord must pay for an excessive rental charge with vacancy; a town or county can use its zoning power to raise prices without any consequences for itself, or even with salutary consequences such as a greater tax base. Although such an act is not forbidden in and of itself, to the extent that it disproportionately impacts minorities, the FHA is implicated. *Smith, supra; Arlington II, supra.*

*Smith* sets out the factors to be used to evaluate an allegedly illegal municipal action:

"(1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis*; (3) what is the defendant's interest

in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing."

682 F.2d at 1065 (citing *Arlington II*, 558 F.2d at 1290).

Crucial to the showing of discriminatory effect is the definition of the relevant comparison group. It is not enough to show merely that most of those affected by an action are minorities; rather, a court must determine "whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied." *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 986 (4th Cir. 1984). For instance, policies regarding migrant farm worker housing did not implicate the FHA despite the fact that 90% of the migrant farm workers were black, because the same policies affected white migrant farm workers in the same way and to the same degree. *Edwards v. Johnston County Health Dep't*, 885 F.2d 1215, 1223-24 (4th Cir. 1989). On the other hand, FHA violations can be found even where the larger minority community is not harmed, or where a policy has no prospect of violating the FHA outside of a single isolated instance. *Betsey*, 736 F.2d at 986-87. The purpose of the FHA is to protect individuals. *Id.*

Municipal actions may also violate the FHA if they tend to perpetuate segregation of the community. *Edwards*, 885 F.2d at 1223.

## IV. DISCUSSION

There is only one question still pending in this case: whether the changes in the Culpeper County M-2 zone made in late 2006 violate the FHA. Uncertainty surrounding the precise content of this change was the reason that the Smith family's claims were not resolved in the prior Motion to Dismiss. It is now clear that M-2 is an industrial zone. Def. Mot. Ex. 1 (docket

# 22). Under the old rules, the M-2 zone permitted all uses permitted in the C-2 zone, which in turn permitted R-3 uses. *Id.* R-3 includes various kinds of multi-family homes with three or more units. Pl. Brief in Opp. Ex. G (docket # 25). M-2 explicitly forbade single family homes. Def. Mot. Ex. 1. Thus, even before the zoning amendment, the Smith house, being single-family, was a non-conforming use. Both sides agree that it was legal, having been grandfathered in when the C-2 zoning was changed in 1991. Pl. Brief Ex. H. It remains legal under the new rule. Pl. Brief Ex. L. Because it is non-conforming, however, it could not be expanded, which Plaintiffs claim is necessary to make the house satisfactory for their needs. Culpeper County Code § 12-1-3.1 (*avaiable at* http://www.culpepercounty.gov/CountyAttny/code.asp). The text amendment thus had no effect on Plaintiffs' use of the home as a single-family residence or their ability to remodel or expand it for that purpose. Because it had no effect, it can not possibly have had a discriminatory effect.

It is undisputed, however, that the text amendment deprived Plaintiffs of the ability to either convert their existing home into a boarding house with multiple apartments, or to raze it and replace it with some form of multi-family dwelling. Defendant conceded both of these possibilities at the hearing. The exact amendment reflecting this change also appears in Ex. 2 to the Defendants' brief.

Plaintiffs have presented neither allegation nor evidence that this change has had any racially discriminatory effect. Other than assertions that housing patterns in Culpeper county are already segregated, there are no facts in the record which would indicate that the inability to construct multi-family homes in the M-2 zone will disproportionately harm minorities. Nor have Plaintiffs demonstrated, or even alleged, that the inability to create multi-family houses, either on the Smith property or in M-2 generally, will perpetuate segregation. There are simply no data on

the relevant comparison groups to draw a conclusion.

In the absence of any information on the housing patterns of Culpeper County and their breakdown both by zoning and race, Plaintiffs' case collapses into hypothetical possibilities. Plaintiff's notion that they might have wished to convert their home to a boarding house, or replace it with new multi-family construction, is speculative at best. Defendant has presented evidence that they never had any such intention and were concerned exclusively with the preservation of their existing home. Def. Supp. Brief Ex. 1 (Docket # 28). Plaintiffs have not offered any evidence whatsoever that such a plan existed, or that they had the ability to achieve it. Even if such construction were a practical possibility, unless Plaintiffs could demonstrate that their small development would be a racially integrated, it would have no effect whatsoever on the FHA question. I will not speculate on the hypothetical tenants of a hypothetical housing project.

Applying the *Smith* factors to the zoning text amendment, there is no suggestion of discriminatory intent. There is no evidence of discriminatory effect. Defendants certainly have an interest in regulating land use sufficient to justify making occasional adjustments to the zoning laws, even when such changes eliminate previously legal uses. Finally, in Plaintiffs' favor, they do not seek to force Defendants to actually provide housing, but merely to remove a restraint upon it. Three of the four factors weigh in favor of Defendants; the first two, which are absolutely essential to an FHA claim, are entirely in Defendants' favor. The zoning amendment does not violate the Fair Housing Act.

## V. CONCLUSION

The Motion for Summary Judgment is GRANTED. This case is DISMISSED and STRICKEN from the docket. Because the entire case is closed and may now be appealed, the June 11, 2007 Motion for Certificate of Appealability is DISMISSED as moot.

The Clerk of the Court is directed to send a certified copy of this Order to all counsel of record.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

August 7, 2007
Date